ROBB, Executor *v.* BERRYMAN et al.

[No. 83, September Term, 1957.]

162

*Decided December 20, 1957.*

164

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John M. Robb* for the appellant.

*William C. Walsh* and *William Walsh,* with whom were *Miles, Walsh & Stockbridge* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

This is a suit in equity, brought by the remaindermen of a life estate under a will against the executor of the life tenant, to determine whether certain assets held by the executor are a part of the assets of the life estate, or are part of the individual estate of the deceased life tenant.

Francis William King died on February 9, 1934, leaving a will which was duly admitted to probate, and which provided as follows:

> "After the payment of my just debts and funeral expenses, I give, devise and bequeath all my property, of every kind and description, unto my beloved wife, Lillian M. King, for and during the term of her life only, with full power unto the said Lillian M. King during her life to sell, grant, convey, mortgage, assign, lease, release, or dispose of said property, or any part thereof, in her sole name, and to invest and re-invest the said property and the rents, profits and revenues thereof, and otherwise in any manner to change, dispose of, use and deal with said

property and the rents, profits and revenues thereof during her life and for her sole benefit and at her sole discretion as fully as I could do.

"After the death of my said wife, and after the payment of her just debts and funeral expenses out of that portion of the estate remaining in her hands at the time of her death, I give, devise and bequeath all my said estate, or all my said estate which shall not have been disposed of by my wife during her lifetime under the above power, unto my six sisters, * * * and to my two brothers, * * *.

"And I hereby appoint my wife, Lillian M. King, to be the Executrix of this, my last Will and Testament and request that she be not required to give bond as such."

Mrs. King qualified as executrix, and stated her "First and Final Account" in the Orphans' Court for Allegany County on August 21, 1934, and in this account she distributed under this heading, "To Lillian M. King—widow. For and During the Term of Her Natural Life—see Will," securities having an appraised value at that time of $41,234.81, plus $80.96 accrued interest, jewelry appraised at $80.00 and cash of $27,237.49, making a total of $68,633.26.

Mrs. King took over the assets and held them until her death, some twenty-one years thereafter. She apparently was not a skilled business woman and did not render any accounting of her stewardship. She seems to have regarded the assets that she held as a life tenant the same as her own. On occasions when stocks were sold by her, she left no record of what was done with the proceeds of the sales; when new stock was issued for old because of the mergers of corporations, etc., Mrs. King, several times, turned in stock that formerly belonged to Mr. King and had new certificates made in her name; she frequently made deposits in the several bank accounts under her control, which are mentioned below, without leaving any record of the source from whence they came. The evidence fails to disclose any intentional wrong-doing on the part of Mrs. King, but she was not an

experienced business woman, and evidently did not realize the importance of keeping separate records of the assets of the life tenancy, so that these assets would not be commingled with her own. She received about $2,500 a year as income from Mr. King's estate, and spent at least the same amount for her maintenance and support. The evidence establishes the fact that, over the years, she expended a portion of the corpus of Mr. King's estate, but this, the appellees concede she had a right to do.

Mrs. King died on January 4, 1956, testate; her will provided for the payment of her debts, made several pecuniary legacies, and bequeathed and devised the remainder of her estate to her nephew, William B. Robb, Jr. This nephew was named therein as executor, and he has duly qualified as such.

Upon Mrs. King's death, her executor took control of all personal assets that were in her possession immediately prior thereto. These had a value of $79,247.79, which included all of her individual assets as well as those remaining from the previous life estate. Of these assets, including cash in the home, bank accounts, stocks, and bonds, $38,319.74 was held by Mrs. King in the name of Frank King, as Lillian King, Executrix of Frank King, or as Lillian King, Life Tenant. The appellant-executor admits that these assets are distributable to the remaindermen. The remaining amount of $40,928.05 was held by Lillian King in her own name. It was represented by bank accounts, stocks, and bonds; and included therein were a $2,000 U. S. Savings Bond, issued as payable on the death of Mrs. King to W. B. Robb, Jr., and $6,530 in cash in an envelope in her home. The defendant contends these last named assets, representing $40,928.05, are distributable under the will of Mrs. King.

The appellees-remaindermen do not deny that a portion of the assets just mentioned was owned by Mrs. King, individually, but contend the major part thereof belonged to her as the life tenant of Mr. King, and therefore was distributable under his will. They filed a suit in equity praying, *inter alia,* that the executor of Mrs. King be required to file therein a complete list of the assets in his hands belonging to the

estate of Lillian King and Francis William King, to the end that a determination could be made by the court as to which of said assets properly belonged to each of said estates; and for general relief.

At the time of Mr. King's death in 1934, Mrs. King had a savings account in The Liberty Trust Company of Cumberland in the amount of $2,098.12. In 1934, she deposited in this account $1,087.16, which she received as the proceeds of a life insurance policy, and $2,837.39, which she received as commissions for administering her husband's estate. These items, plus $36.99 accrued interest, made a total of $6,059.66 in this account, which was owned by Mrs. King, individually. The chancellor allowed the executor interest on this amount until the date of Mrs. King's death (as calculated by the Liberty Trust Company), and added thereto the sum of $749.00 which Mrs. King received from the sale of seven shares of stock of the Cessna-Magruder Company, which were owned by her. These items totalling $8,689.29 and four shares of stock of the Liberty Trust Company were all of the assets that the chancellor was able to identify as belonging to Mrs. King in her own right at the time of her death. He, consequently, decreed that her executor should administer these assets, and all of the remaining assets (subject to the payment of her debts and funeral expenses as provided in Mr. King's will) belonged to the remaindermen. It is from this decree that the executor has appealed.

The executor contends that under Mr. King's will, which gave the life tenant unlimited power to use, consume and dispose of the estate, and left whatever remained at the life tenant's death to remaindermen, the executor's testatrix was entitled to set aside the income from the life estate as her own property, and to expend the corpus of the life estate for her living expenses. He requests us to assume that it was Mrs. King's intention to treat the accumulated income as her own property and that she was expending the corpus for her living expenses because, at her death, she had certain bank accounts, stocks, and bonds in her individual name. He argues that she was the sole and absolute owner of the income from Mr. King's estate during her life tenancy; and

this ownership, coupled with an unlimited power to "use and deal" with the property in the life estate "for her sole benefit and at her sole discretion," gave her the unquestionable right to accumulate the income as her individual property, and to spend the corpus thereof for her living expenses. With this contention, even if we assume it was Mrs. King's intention to so treat the property, we are unable to agree.

The law is well established in Maryland that one may grant a life estate to one person, with power given to that person to use, consume and dispose of the same for designated purposes, or upon named contingencies, with a valid remainder in the unused portion to other persons. *Miller, Construction of Wills,* sec. 105. Mrs. King therefore took a life estate in Mr. King's estate, coupled with the power, among others, to use, consume and dispose of the same *"during her life* and for her *sole* benefit," with a remainder over to Mr. King's sisters and brothers of that portion "which shall not have been *disposed of* by [his] wife *during her lifetime."*

The cardinal rule in the construction of wills, around which all others center, is that the intention of the testator (when ascertained from the whole instrument, or from the instrument as read in the light of surrounding circumstances existing at the date of its execution) must be given effect, if that intention does not conflict with some rule of law or of property. *Miller, op. cit.,* sec. 9. It seems clear to us that Mr. King's primary object or intention in the disposition of his property was to provide, adequately and surely, for Mrs. King's support and comfort during the remainder of her life. To insure this, he was not only willing that she have the income from his estate, but also that she have authority to invade the corpus, if she desired. This is stated in the will with certainty and without ambiguity. We think it is also equally clear from the terms of the will that any portion of the corpus of his estate, which his wife had not disposed of during her lifetime, Mr. King intended to go to his brothers and sisters. It will be noted Mr. King did not give Mrs. King the power to dispose of any of his estate by her will, but only the power to do so "during her life and for her sole benefit." If she

were permitted to accumulate the income, support herself from the corpus of Mr. King's estate, and then dispose of the accumulated income by her will, she would be allowed to do by indirection that which she was not permitted to do directly, and thus Mr. King's intention that his brothers and sisters receive the unused portion of his estate would be thwarted.

In *Smith v. Hardesty,* 88 Md. 387, 41 A. 788, the will was similar in many respects to the one involved here. A testator left property to his wife *during her natural life* with *power* to sell and dispose of the same in such manner as she may desire, to exercise all rights of ownership over the same, and to devise the same at her death to his children, or either of them. The will further provided that upon the death of his wife he bequeathed and devised all of his property that remained undisposed of by his wife to his children. The testator's two children predeceased their mother, and she attempted to devise her husband's property to a grandchild. This Court held that the primary purpose of the husband was to provide for the wife's comfort; that the power to sell, dispose of, or convert the property as she should think proper had *exclusive* reference to the comfort of the wife and meant *only* such disposition as should be effective in her lifetime and as should be designed primarily for her benefit and advantage. Cf. *McClernan v. McClernan,* 73 Md. 283, 20 A. 908; *Mills v. Bailey,* 88 Md. 320, 41 A. 780; *Roberts v. Roberts,* 102 Md. 131, 147, 62 A. 161; *In re Davison Trust Estate,* 103 Md. 479, 63 A. 1044; 33 *Am. Jur., Life Estates, Remainders,* etc., sec. 243; Annotations, 2 A. L. R. 1316, and 69 A. L. R. 830. We hold that Mrs. King had no authority to accumulate the income from the life estate, support herself on the corpus of Mr. King's estate, and bequeath the accumulated income to persons of her own selection.

Having reached this conclusion, we proceed to the inquiry as to whether the chancellor was correct in the amount of the assets that he decreed was distributable to the remaindermen. It may properly be inferred from the evidence, in fact it seems to be conceded, that Mrs. King had no other source of revenue than the assets owned by her at the time of Mr.

King's death, and the estate left by Mr. King. A simple examination of the figures (set forth in detail at the beginning in order to make this computation) shows that she expended all of the income derived from both estates, and a part of the corpus of Mr. King's estate. These figures disclose the following:

| | | |
|---|---|---|
| Total assets held by Mrs. King at her death. | $79,247.79 | |
| Total assets received by Mrs. King as life tenant. | | $68,633.26 |
| Total assets established as belonging to Mrs. King, individually. | | 8,689.29 |
| Net gain in appraised value of securities in the period between Mr. and Mrs. King's deaths, as per stipulation. | | 5,916.48 |
| Amount Mrs. King necessarily expended from the corpus of Mr. King's estate | 3,991.24 | |
| | $83,239.03 | $83,239.03 |

As we have held that Mrs. King could not accumulate the income from the life estate and expend the corpus of Mr. King's estate, and the above figures show that she consumed all of the income from, and a part of the principal of, the life estate, it follows as a necessary consequence that the chancellor was correct in the amount that he decreed was distributable to the remaindermen.

This finally disposes of the matter in controversy; so it is unnecessary to consider the other questions raised in the appellant's brief.

*Decree affirmed, with costs.*